# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| TYONNA SAENSINBANDIT, ) | |
| Plaintiff, ) | 3:18-CV-00267 JWS |
| vs. ) | ORDER AND OPINION |
| ) | [Re: Doc. 61] |
| ALASKA AIRLINES, INC., ) | |
| Defendant. ) | |

## I.  MOTION PRESENTED

At docket 61 Defendant Alaska Airlines, Inc. ("Defendant" or "Alaska Airlines") filed a motion for summary judgment, with portions of the motion redacted pursuant to the protective order in this case.  A sealed, unredacted version of the motion was filed at docket 70.  Plaintiff Tyonna Saensinbandit ("Plaintiff") filed a sealed response at docket 94.  Defendant filed a redacted reply at docket 100 and a sealed, unredacted reply at docket 104.  Oral argument was requested but was denied as oral argument would not be of assistance to the court's decision.

## II.  BACKGROUND

In 2017, Plaintiff applied for employment as a Customer Service Agent ("CSA") for Alaska Airlines in the Fairbanks station.  CSAs are responsible for performing customer service activities, including checking in passengers and their luggage, facilitating departures at the gate, operating jet bridges, assisting in the baggage service office, and performing other duties as assigned.  Plaintiff had an in-person interview with

the station supervisor, Chanthal Harris ("Harris"), and Harris' supervisor, Alyssa Stephan ("Stephan"), who was the station and customer service manager. Harris and Stephan, with input from Alaska Airlines' human resources department, made the decision to hire Plaintiff as a CSA effective June 19, 2017.

Pursuant to Alaska Airline policy, Plaintiff was a probationary employee. A collective bargaining agreement ("CBA") governed Plaintiff's probationary employment. The CBA covers rules, policies, procedures, and regulations that are applicable to Alaska Airlines' probationary employees. Under the CBA, Alaska Airlines is permitted to release probationary employees from probation if they do not satisfactorily perform their job responsibilities.

Harris and Stephan supervised Plaintiff throughout her probation. Harris, however, supervised her day-to-day conduct. By September of 2017, Harris reported that Plaintiff's performance had declined and that she had trouble with her attitude and self-management, including improper personal cell phone use and unscheduled breaks away from her assigned station. Around this same time, on September 13 continuing into September 14, Plaintiff ended up working three shifts in a row, amounting to a 20-hour workday in contravention of the applicable CBA. A co-worker reported Plaintiff's long shift to supervisors. A few days later, on September 19, Harris and Stephen met with Plaintiff to discuss her performance issues.

On October 24, 2017, Harris and Stephan sought approval from Alaska Airlines to release Plaintiff from probation. They reported to the applicable Alaska Airlines' personnel board that they wanted to release Plaintiff from employment based on continued performance issues despite discussions aimed at remedying the problem behavior. The board approved the request. Harris emailed Plaintiff on October 28, 2017, setting up a meeting wherein she planned to terminate Plaintiff's employment. The meeting was set for November 2.

On October 30, 2017, Plaintiff submitted a complaint about Harris to a regional manager, Peter Gundersen. She reported that Harris intimated her, told her she would

not move up in the company, and criticized her attitude. Gundersen contacted Anna Endorf, a human resources specialist within the company, to start an investigation. The next day, Plaintiff submitted a second complaint through Alaska Airlines' ethics and compliance hotline. In the call, Plaintiff alleged Harris engaged in racial discrimination, harassment, and retaliation. Specifically, she reported that Harris had told her that "black people are replaceable."[1]

Alaska Airlines investigated Plaintiff's complaint. On November 27, 2017, the company concluded that Plaintiff's complaint could not be substantiated. On November 28, Stephan met with Plaintiff to go over her performance deficiencies. During this conversation, Plaintiff disclosed that she was experiencing anxiety and depression. She had first mentioned the issue of mental illness to Alaska Airlines personnel during the investigation period, wherein she informed Endorf that she had been diagnosed with anxiety and depression and was taking medication. Endorf told her to go through the proper channels to request an accommodation if needed.

Alaska moved forward with its initial decision to release Plaintiff from probation. Plaintiff was released from employment on November 29, 2017.

Plaintiff subsequently filed this complaint against Alaska Airlines. She raises a multitude of claims against it under both federal and state law: (1) race discrimination; (2) unlawful retaliation; (3) hostile work environment; and (4) disability discrimination. She also raises a state law claim against Alaska Airlines under AS 23.10.135(6), alleging it retaliated against her for reporting wage and hour violations, as well as state claims for bad faith and intentional infliction of emotional distress.

---

[1] Endorf's report about the call says that Plaintiff reported Harris "implied" that African American employees are replaceable. Doc. 63-2 at p. 1. Plaintiff, however, alleges and testified in her deposition that Harris outright stated as much. Doc. 78 at p. 47; Doc. 86 at ¶ 12.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[6] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[7] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[8] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[9]

---

[2]Fed. R. Civ. P. 56(a).

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4]*Id.*

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[6]*Id.* at 323.

[7]*Id.* at 323-25.

[8]*Anderson,* 477 U.S. at 248-49.

[9]*Id.* at 255.

However, the non-moving party may not rest upon mere allegations or denials but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[10]

## IV.  DISCUSSION

**A. Race Discrimination**

A plaintiff responding to a summary judgment motion on a race discrimination claim may proceed in one of two ways.[11]  A plaintiff may simply produce evidence—direct or circumstantial—demonstrating that race discrimination "more likely than not motivated the defendant's decision."[12]  Alternatively, a plaintiff may instead proceed under the *McDonnell Douglas* burden-shifting framework.[13]

Under the burden-shifting framework, a plaintiff must establish a prima facie case of discrimination.  A prima facie case requires a showing that (1) she belongs to a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated her differently than a similarly situated employee who does not belong to the same protected class.[14]  Establishing a prima facie case creates a presumption that the employer decided on the adverse employment action because of the plaintiff's race.[15]  The burden then shifts to the employer to provide admissible evidence that it had a legitimate, nondiscriminatory

---

[10]*Id.* at 248-49.

[11]Title VII analysis applies to employment discrimination claims under 42 U.S.C. § 1981. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n.5 (9th 2006).  It also applies to state discrimination claims. *Era Aviation, Inc. v. Lindfors*, 17 P.3d 40, 43 (Alaska 2000 ) ("We look to decisions under Title VII in interpreting Alaska's anti-discrimination laws, and have, in large part, endorsed the federal approach to analyzing claims of disparate treatment.").

[12]*Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005).

[13]*Id.*; *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 n.7 (9th Cir. 2019).

[14]*Weil*, 922 F.3d at 1003.

[15]*Cornwell*, 439 F.3d at 1028.

reason for the action.[16] If the employer does so, "the presumption of discrimination drops out of the picture and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required in civil cases under Fed. R. Civ. P. 56(c)."[17] That means, in the context of employment discrimination claims under Title VII, a plaintiff must provide evidence from which a reasonable jury could conclude, by a preponderance of the evidence, that the defendant undertook the adverse action because of the plaintiff's race.[18] She may do so in one of two ways: either (1) directly, by showing that unlawful discrimination more likely motivated the employer, or (2) indirectly, by showing that the stated reason is not worthy of credence.[19] "Importantly, the 'shift' back to the plaintiff does not place a new burden of production on the plaintiff."[20] "[T]he factfinder may infer the ultimate fact of intentional discrimination without additional proof once the plaintiff has made out her prima facie case if the factfinder rejects the employer's proffered nondiscriminatory reasons as unbelievable."[21]

A plaintiff need not go through the steps of establishing a prima facie case if she has sufficient evidence from which a jury could find discriminatory intent: "[I]t is not particularly significant whether [a plaintiff] relies on the *McDonnell Douglas* presumption or whether [s]he relies on . . . evidence of discriminatory intent to meet [her] burden."[22] That is to say, even under the burden-shifting approach, assuming the employer has

---

[16]*Id.*

[17]*Id.* (internal quotation marks omitted).

[18]*Id.*

[19]*Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007).

[20]*Id.* at 1169-70.

[21]*Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003) (internal quotation marks omitted).

[22]*McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004).

-6-

articulated a lawful reason for the adverse action, a plaintiff must produce evidence suggesting the adverse action was due in part or whole to discriminatory intent.[23]

Here, the record contains evidence of discriminatory intent that is sufficient to create an issue of fact for the jury without having to rely on the burden-shifting analysis. Plaintiff alleges that Harris, her direct supervisor, told her that "blacks are replaceable." Alaska Airlines asserts that such a statement is ambiguous as to racial discrimination, particularly as applied to Plaintiff's termination. The court disagrees. The alleged comment references race explicitly and generalizes employees based on race; it is not race neutral. Furthermore, such a statement, assuming it was uttered as this court must, shows racial animus—a belief that an employee can be fired simply because of her race. Plaintiff contends that the statement by her supervisor was directed at her during a discussion about Plaintiff's future with the company, and thus it was not a "stray" comment made apart from the decision to terminate Plaintiff.[24]

Alaska Airlines contends that because Harris herself is half African American such a statement could have been made for any number of reasons, not all of which reflect racial animus towards employees. However, the fact that Harris may identify as African American does not preclude a finding of discriminatory animus.[25] As to Harris' intent in making such a comment, for purposes of summary judgment, all inferences must be drawn in favor of Plaintiff.[26]

---

[23]*Id.*

[24]*Dominguez-Curry*, 424 F.3d at 1038.

[25]*Cf. Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1282 (9th Cir. 2017) (noting that a claim of sex discrimination is not barred simply because the plaintiff and the employer or person acting on behalf of the employer are of the same sex).

[26]*Dominguez-Curry*, 424 F.3d at 1038-39.

Alaska Airlines argues that Plaintiff's allegation should be discounted because she provides "no context, no witnesses, and no corroborating evidence."[27] That argument is unavailing: "While a factfinder is free to conclude at trial that the plaintiff's account is insufficiently detailed to be believable, the district court must refrain from making such credibility assessments on summary judgment."[28] Moreover, additional evidence is not required, as "a single discriminatory comment by a plaintiff's supervisor . . . is sufficient to preclude summary judgment for the employer."[29]

Even considering the record under the *McDonnell Douglas* framework, as both parties do, the court concludes Plaintiff has established a prima facie case of discrimination. Alaska Airlines argues that Plaintiff has not shown adequate performance on her part, nor has she presented evidence that she was treated differently than other probationary CSAs outside her protected class. The burden at this prima facie phase, however, is light: "[I]t is important to remember that '[t]he requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'"[30]

Plaintiff has put forth evidence showing some lead CSAs and coworkers believed her performance was adequate.[31] Alaska Airlines argues that Plaintiff cannot create an issue of fact as to adequate performance by presenting contrary opinions of former Alaska Airlines' employees because the record shows that Harris, her direct supervisor, repeatedly criticized Plaintiff's performance. Such an argument asks the court to

---

[27] Doc. 104 at p. 13.

[28] *Dominguez-Curry*, 424 F.3d at 1039.

[29] *Id.* at 1039.

[30] *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994)).

[31] Doc. 91-4 at p. 4; doc. 92-1 at p. 1.

consider the source of the opinion and weigh reliability and credibility, which it cannot do. Plaintiff's evidence must be credited as true. Indeed, for purposes of establishing a prima facie case, a plaintiff's assessment of her own performance is relevant, especially when coupled by positive evaluations and third-party declarations stating that she performed adequately.[32]

Plaintiff also attempts to show that Alaska Airlines treated similarly situated employees differently. She relies on evidence that two probationary CSAs, not in plaintiff's protected class, caused damage to airplanes by incorrectly operating the jet bridges and were not released from probationary employment despite the severity of their errors in performance. Plaintiff also presents declarations of other employees generally stating that African American CSAs were treated differently than other CSAs and more specifically stating that they observed many non-black CSAs using personal cell phones without reprimand.[33] Plaintiff also argues that of the CSAs working at the Fairbanks station at that time, six out of forty-two were African American, and two of those six were released from employment in 2017, thereby further reducing the proportion of CSAs that were African American. While the court agrees with Alaska Airlines that Plaintiff's supporting declarations from coworkers lack specificity and that the data presented is of strained relevance,[34] the evidence is nonetheless sufficient at this prima facie stage.[35]

---

[32]*Aragon*, 292 F.3d at 660 ("Because we are still at the prima facie stage, [the plaintiff's] self-assessment of his performance is relevant, and, in any case, it is not the only evidence he presented.").

[33]Doc. 87 at ¶13; Doc. 88 at ¶¶13, 21; Doc. 89 at ¶9; doc. 90 at ¶¶14,15.

[34]*Aragon*, 292 F.3d at 663 (discussing the issues with using statistical evidence derived from a small sample size).

[35]*Id.* at 660 (endorsing minimal showing necessary to establish co-workers were similarly situated and stressing the nominal evidence needed to clear the "minimal prima facie bar").

Given that Alaska Airlines has clearly met its burden of production to support its argument that Plaintiff was dismissed for lawful performance issues,[36] the issue simply becomes one of "discrimination *vel non*."[37]  That is, the court must consider whether plaintiff put forth enough evidence to create an issue for the jury as to discriminatory intent.[38]  As noted above, Harris's alleged comment that "blacks are replaceable" is enough evidence from which a jury could conclude that Plaintiff's race played a role in the decision to fire her.  Because this statement alone is sufficient evidence to create a triable issue, Plaintiff's claim does not turn on her circumstantial evidence of pretext, such as the declarations from former co-workers who believe Harris treated African American employees unfavorably and which Alaska Airlines contends are too generalized and speculative to support a finding of pretext.  Standing alone, Plaintiff's circumstantial evidence may be too weak to withstand a summary judgment motion, but taken together with Harris' alleged statement, it bolsters Plaintiff's position that discriminatory intent played a part in her firing.[39]  Indeed, Plaintiff's burden to raise a triable issue of fact as to pretext is "hardly an onerous one."[40]  "'This is because the

---

[36] *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) ("Only the burden of production shifts; the ultimate burden of persuasion remains with the plaintiff. The employer need not persuade the court that it was actually motivated by the proffered reasons . . . .")

[37] *McGinest*, 360 F.3d at 1123.

[38] *Cornwell*, 439 F.3d at 1028.

[39] *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015) (recognizing that the court must consider the cumulative effect of the direct and circumstantial when determining whether summary judgment is proper). Indeed, together the evidence is sufficient to overcome any presumption that Harris did not have racial animus because she participated in hiring Plaintiff. Drawing all inferences in favor of Plaintiff, Harris' comment that "blacks are replaceable" supports a finding that Harris would more readily fire a black employee..

[40] *Id.*

ultimate question is one that can only be resolved through a searching inquiry–one that is most appropriately conducted by a factfinder, upon a full record.'"[41]

**B. Hostile Work Environment**

Plaintiff also claims that she was subjected to a hostile work environment under Title VII and state law. To prevail on a hostile workplace claim premised on race, a plaintiff must raise a triable issue of fact as to whether (1) she was subjected to verbal or physical conduct of a racial nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment.[42] In assessing whether a work environment is sufficiently hostile, the court examines the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[43] "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct."[44] Consequently, isolated incidents are not sufficient to create an actionable claim under Title VII unless they are "extremely serious."[45] The same analysis is applied to state law claims alleging discriminatory work environment under AS 18.80.220.[46]

---

[41]*Id.* (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000)); *see also Weil*, 922 F.3d at 1002 (recognizing the importance of guarding an employee's right to a trial since discrimination claims are difficult to prove without full presentation of the evidence and evaluation of witness credibility and noting that even a little evidence of discriminatory intent may suffice to raise a question of fact for the jury).

[42]*Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

[43]*Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 687 (9th Cir. 2017) (quotation marks omitted).

[44]*Id.*

[45]*Id.*

[46]*Peterson v. State, Dep't of Natural Res.*, 236 P.3d 355, 363-64 (Alaska 2010).

-11-

Here, Plaintiff bases her claims of harassment on three comments: (1) Harris told Plaintiff that blacks are replaceable; (2) Harris told Plaintiff that she, Harris, had worked with prisoners before; and (3) Harris told Plaintiff she would never move up in the company. She also generally alleges that Harris treated her rudely and unfairly. While the court views the evidence in the light most favorable to Plaintiff and therefore finds Harris' single comment that "blacks are replaceable" to reflect discriminatory bias, it was not an "extremely serious" utterance that could alone support a finding that Plaintiff was subjected to a hostile work environment. Even when coupled with Harris's more ambiguous comment about having worked in a prison and Plaintiff's other allegations of unfair treatment by Harris, there is simply not enough evidence to show that Plaintiff was subjected to the type of conduct needed to make an objective finding of abusive work conditions.[47]

**C. Retaliation for Race Discrimination Complaint**

Plaintiff alleges that Alaska Airlines retaliated against her for reporting Harris' discrimination. Retaliatory discharge claims follow the same burden-shifting framework described above.[48] To establish a prima facie case of retaliation, a plaintiff must show (1) she engaged in a protected activity; (2) the employer subjected her to an adverse employment action; and (3) there was a causal link between the protected activity and

---

[47]*See Manatt v. Bank of Am., NA*, 339 F.3d 792, 795 (9th Cir. 2003) (finding no hostile work environment where the plaintiff, an employee of Chinese descent, overheard coworkers use the term "China man" and mock her accent, and where her supervisor told the plaintiff that he "had the worst kind of trouble with [the plaintiff's] countrymen."); *Vasquez*, 349 F.3d at 643 (finding no hostile work environment where the employee was told that he had a "typical Hispanic macho attitude" and that he should start working in the field because "Hispanics do good in the field"); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1107-11 (9th Cir. 2000) (finding no hostile work environment when a supervisor called female employees "castrating bitches," "Madonnas," or "Regina" on several occasions in plaintiff's presence; the supervisor called the plaintiff "Medea;" the plaintiff complained about other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor).

[48]*Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011).

-12-

the employer's actions.[49] The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activity and the proximity in time between the protected activity and the adverse action.[50] If a plaintiff establishes a prima facie case of unlawful retaliation, the burden shifts to the employer to provide evidence that the challenged action was taken for legitimate, non-discriminatory reasons.[51] If the employer succeeds in doing so, the plaintiff must show that the defendant's explanation is merely pretext.[52]

Plaintiff cannot establish the needed causal link between her complaint of race discrimination and her termination. It is undisputed that Plaintiff engaged in a protected activity on October 31, 2017, when she reported racial discrimination to Alaska Airlines' ethics hotline. However, this complaint was made after Harris and Stephan requested Plaintiff be released from probation, after Alaska Airlines approved the request, and after Harris had set up the meeting to tell Plaintiff about her termination.[53] Such timing cannot support a prima facie case of retaliation: "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."[54]

Plaintiff argues that there is no documentary proof that her termination was approved by the company's termination board before she filed her complaint. However, all the admissible evidence in the record shows that her supervisors did indeed receive permission to release her from employment and were planning to do so on November 2,

---

[49]*Id.*; *Mahan v. Arctic Catering, Inc.*, 133 P.3d 655, 660 (Alaska 2006).

[50]*Dawson*, 630 F.3d at 936.

[51]*Id.*

[52]*Id.*

[53]Doc. 62-4 at p. 5, pp. 6-7; Doc. 64 at ¶¶ 4-5; Doc. 73 at p. 3; Doc. 74 at ¶¶ 12-13; Doc. 76 at ¶¶ 7-8.

[54]*Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

-13-

2017.⁵⁵ Plaintiff does not submit any evidence to the contrary. Regardless, the fact that the process had been started before the complaint had been made, bars an inference of retaliation.⁵⁶

**D. Disability Discrimination**

Plaintiff includes a claim for discrimination based on disability under both the Americans with Disabilities Act ("ADA") and AS 18.80.220. The previously discussed *McDonnell Douglas* burden-shifting framework applies to disability discrimination claims.⁵⁷ To state a prima facie case under the ADA, a plaintiff must demonstrate that she (1) is disabled within the meaning of the ADA; (2) is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) suffered an adverse employment action because of her disability.⁵⁸

Unlike a disability discrimination claim based on a failure to accommodate, an unlawful discharge claim based on disability requires a showing that the employer terminated the employee because of his disability.⁵⁹ That is, there must be evidence to show a causal link between the disability and the termination. Often proof of failure to

---

⁵⁵Doc. 62-4 at p. 5, pp. 6-7; Doc. 64 at ¶¶ 4-5; Doc. 73 at p. 3; Doc. 74 at ¶¶ 12-13; Doc. 76 at ¶¶ 7-8.

⁵⁶*Anthony v. Cellco P'ship*, No. 2:09-cv-01024, 2010 WL 5279837, at *6 (E.D. Cal. Dec. 14, 2010) (noting that an inference of retaliation is inappropriate where the uncontroverted evidence shows an employer was investigating employee for termination before the employer learned of the protected activity); *see also Bennett v. Permanente*, No. 14-CV-2676, 2015 WL 6952697, at *8 (N.D. Cal. Nov. 10, 2015) (quoting *Anthony* and *Slattery* for same). *Cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

⁵⁷*See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49-50 (2003) (applying *McDonnell Douglas* burden shifting to an ADA discrimination claim).

⁵⁸*Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012); *Reynolds-Rogers v. Dep't of Health & Soc. Servs.*, 436 P.3d 469, 476 (Alaska 2019) (applying federal standards to a state claim for disability discrimination).

⁵⁹*Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001).

-14-

accommodate a disability can provide the necessary causal link: "The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability."[60]

Here, the record does not contain any evidence from which a jury could reasonably find the requisite causal link between Plaintiff's anxiety and her termination. Alaska Airlines was not informed of Plaintiff's disability, let alone any limitation stemming from that disability, until the decision to release her from probationary employment had been made.[61] Plaintiff asserts in her opposition that Alaska Airlines knew about her anxiety and depression before her official termination, but her argument ignores the fact that the decision to terminate her employment occurred in October before she disclosed any mental health disabilities or limitations stemming therefrom.[62] Plaintiff presents no contradictory evidence. She concedes that she did not disclose her disability to representatives of the company until November.[63] Consequently, there is not enough evidence in the record from which a jury could find a causal connection between her disability and termination.

**E. Retaliation Claim under AS 23.10.135(6)**

Plaintiff alleges that Alaska Airlines violated AS 23.10.135(6) because it fired her, at least in part, because she reported working a 20-hour shift in violation of the applicable CBA. The statute states that an employer violates Alaska's Wage and Hour

---

[60] *Id.* at 1140.

[61] *See Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 164 (5th Cir. 1996) ("[T]he ADA requires employers to reasonably accommodate limitations, not disabilities. . . . Accordingly, it is incumbent upon the ADA plaintiff to assert not only a disability, but also any limitation resulting therefrom. In the instant case, [the plaintiff] failed to adduce any summary judgment evidence showing that he told [his employer] that he was limited as a result of his alleged disability.").

[62] Doc. 62-4 at pp. 5, 6-7; Doc. 64 at ¶¶ 4-5; Doc. 73 at p. 3; Doc. 74 at ¶¶ 12-13; Doc. 76 at ¶¶ 7-8.

[63] Doc. 78 at pp. 15-16, 71-76, 81-83; Doc. 71 at ¶ 6.

-15-

Act when it "discharges . . . an employee because the employee has filed a complaint, or has instituted or caused to be instituted any proceeding under or related to AS 23.10.050 - 23.10.150, or has testified or is about to testify in such a proceeding."[64] AS 23.10.050 -23.10.150 is Alaska's Wage and Hour Act, which establishes and safeguards minimum wage and overtime compensation standards.[65]

The facts here do not support a claim for retaliation under AS 23.10.135(6), because the 20-hour shift did not violate or relate to Alaska's Wage and Hour Act. The Act does not establish limitations on shift lengths. Instead, it sets wage and overtime *compensation* standards. Plaintiff does not allege that Alaska Airlines failed to properly compensate her for the shift in violation of the Act. Indeed, Plaintiff does not identify any other statute or law which prohibits such a lengthy work shift. Therefore, assuming that her co-worker's report to management about the long shift even constitutes the "[filing of] a complaint" under the statute, it was not a complaint related to Alaska's wage and hour laws.

To the extent Plaintiff attempts to amend her complaint to include a common law retaliation claim, her efforts are unavailing. A plaintiff cannot raise a new cause of action or grounds for relief in an opposition to summary judgment.[66]

**F. Breach of Covenant of Good Faith and Fair Dealing**

Plaintiff alleges that Alaska Airlines' conduct violated the implied covenant of good faith and fair dealing. The covenant of good faith and fair dealing "does not lend itself to precise definition, but it requires at a minimum that an employer not impair the right of an employee to receive the benefits of the employment agreement."[67] The

---

[64] AS 23.10.135(6).

[65] AS 23.10.050.

[66] *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006).

[67] *Finch v. Greatland Foods, Inc.*, 21 P.3d 1282, 1286-87 (Alaska 2001).

implied covenant consists of both subjective and objective factors.[68] "If an employer breaches either component, the employer breaches the implied covenant."[69] An employer subjectively breaches the implied covenant of good faith and fair dealing if the employer's termination decision was "actually ... motivated by an improper or impermissible objective."[70] Given that Plaintiff has raised a genuine fact dispute as to discriminatory motives for purposes of her race discrimination claims, it follows that she presented sufficient evidence to overcome summary judgment on her bad faith claim.

In its reply brief, Alaska Airlines raises the issue of preemption as a basis for granting summary judgment. Alaska Airlines asserts that because Plaintiff's claim for bad faith, a contractual claim, requires the court to interpret the CBA that governs Plaintiff's job responsibilities and release from employment, it is preempted under the RLA. The court need not consider this argument, which was first raised and tersely addressed in a reply brief.[71]

In any event, the fact that the underlying employment contract is a CBA does not automatically trigger preemption. Instead, a claim is preempted if it arises entirely from a right or duty of the CBA or if establishing the elements of the claim will require interpretation of a CBA.[72] The claim that Alaska Airlines breached its implied covenant

---

[68]*Id.*

[69]*Crowley v. State, Dep't of Health & Soc. Servs.*, 253 P.3d 1226, 1230 (Alaska 2011).

[70]*Id.*

[71]*Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (noting that a "district court need not consider arguments raised for the first time in a reply brief"); *see also Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 858 n.4 (9th Cir. 1999) (stating that "[a]rguments not raised in opening brief are waived.").

[72]*West v. Alaska Airlines, Inc.*, No. 3:18-CV-00102, 2018 WL 6424705, at *6-*7 (D. Alaska, Dec. 6, 2018) (citing *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904 (9th Cir. 2018) (en banc)).

of good faith and fair dealing by committing violations of civil rights statutes does not appear to implicate the terms of the CBA itself.[73]

**G. Intentional Infliction of Emotional Distress**

Plaintiff also asserts a claim for Intentional Infliction of Emotional Distress ("IIED"). To state a viable claim of IIED, Plaintiff must allege facts tending to show that she was subjected to conduct that (1) was extreme and outrageous; (2) was intentional or reckless; and (3) caused her severe emotional distress.[74] "[T]he first and third elements of this tort–outrageous conduct and serious injury–must be addressed by the trial court in the first instance . . . ."[75] That is, the trial court must make a "threshold determination" about "whether the severity of the emotional distress and the conduct of the offending party warrant a claim of [IIED]."[76]

Assuming Plaintiff's allegations about Harris are true, there were no more than a few derogatory comments made and only one of which clearly reflects racial animus. This falls short of the sustained and concerted harassment needed to support such a claim:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.[77]

---

[73]*See Id.* at *13.

[74]*Finch*, 21 P.3d at 1288.

[75]*Id.*

[76]*Id.* at 1288-89 (quoting *Richardson v. Fairbanks North Star Borough*, 705 P.2d 454, 456 (Alaska 1985)).

[77]*Finch*, 21 P.3d at 1289 (citing Restatement (Second) of Torts § 46(1) cmt. d).

-18-

Even when the comments are considered with Plaintiff's allegations that Harris lied about her performance and treated her rudely, Plaintiff cannot sustain her IIED claim. Indeed, the Alaska Supreme Court held that a targeted campaign of workplace harassment and discrimination did not amount to outrageous conduct because it involved mere threats and ridicule, even though the same evidence was sufficient to overcome summary judgment on a constructive discharge claim.[78]

## V. CONCLUSION

Based on the preceding discussion, Defendant's motion for summary judgment at docket 61 is GRANTED IN PART AND DENIED IN PART. It is denied as to Plaintiff's claims of race discrimination under Title VII, § 1981, and AS 18.80.220 and as to Plaintiff's state law claim for breach of the covenant of good faith and fair dealing. It is granted as to Plaintiff's state and federal claims for hostile work environment, disability discrimination, and retaliation, as well as her state claim for intentional infliction of emotional distress and her state wage and hour retaliation claim under AS 23.10.135(6).

DATED this 6th day of April 2020.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[78] *See Id.*